## Maysville Turnpike Road Company vs. How.

Case 15.                    ERROR TO MASON CIRCUIT.

1. A right conferred by the legislature upon a turnpike road com-
   pany, cannot be taken away by subsequent legislation; but sub-
   sequent legislation, which may be supposed to conflict with
   chartered rights, should not be so construed, unless it be im-
   periously demanded by the general scope and evident design of
   all the provisions of the charter bearing upon the subject.

2. The 14th section of the charter authorized the Maysville turnpike
   road company to erect a gate upon the completion of five miles
   of road, upon certain conditions, and by the 15th section the
   company are authorized to collect, from all persons using
   said road, the prescribed tolls, "the following sums of money."

3. The reasonable construction of the enactment is, that a person
   found traveling the road, whose residence is unknown, shall pay
   the tax at each gate; but one whose residence is known shall
   only be required to pay in proportion to the distance he travels
   on the pike.

This case is fully presented by the following facts agreed by the parties: "That the plaintiff, How, travels seven and a quarter miles on the turnpike, and passes through two toll-gates, at which he pays full tolls; and that he has paid the sum of $25 over what would have been the tolls if proportioned to the distance traveled. It is also agreed that the company have received no more than the regular tolls charged at each gate, and that the rates of tolls established

and collected by them are in accordance with the original and amended charter. Joseph How, plaintiff, is a citizen of Mason county; lives contiguous to the Maysville and Lexington turnpike road, and he has paid the excess of tolls, before stated, in traveling from his residence, in Mason county, to the court house of the county in Maysville." How recovered a judgment against the Maysville and Lexington turnpike road company, on the facts stated, for extra tolls paid, for $25, and the company prosecute this writ of error.

WALLER, for the plaintiff—

Argued, that the original charter, sections 14 and 15, authorized the collection of the tolls as charged and collected of How. And that in the charges made against him there has been no violation of the 8th section of the act of 1830, amendatory of the original charter.

That the charter no where requires that when a gate is passed that the charge shall be graduated by the actual distance which may have been traveled upon the road. That the power to charge the specified tolls is unrestricted, and though the company *may* charge less, they cannot exceed the specified rates of charge for travel; that the company have a clear express—not an implied—power to charge according to the prescribed rates.

The gate keeper has no authority to question the traveler as to the distance he has, or intends to travel on the road, nor is the company thrown upon the honesty of the traveler for a correct report, nor to enter into a minute calculation of the fractions that may be involved in such a calculation.

It is the passing of a gate which incurs the duty to pay, and the right to demand the toll specified.

That the charter to this corporation stands upon the same footing of a contract between the state and the stockholders; neither party has the right to change its terms without the consent of the other; the legisla-

ture have no power over it; rights acquired under it become vested, when stock is purchased and stockholders invest their money under the faith of the act of incorporation. (See *Dartmouth College case,* 4 *Wheat.* 518; *Territ &c. v. Taylor,* 9 *Cranch,* 43.) That, although the state is a large stockholder, still she has only the rights belonging in common to other stockholders, and can exercise no rights but those secured by the charter, of electing directors, &c., but none by legislation—she stands upon the same level with other stockholders. (*Bank U. S. v. Planters' Bank of Georgia,* 9 *Wheat.* 904.)

The legislature has no right to alter the rates of toll. (*Charles River Bridge Co. v. Warren Bridge Co.* 11 *Peters.*)

The stock of the company having been taken on the faith of the charter fixing the tolls, no subsequent act of the legislature can change them, hence the act of 1849, and that of 1851, cannot be operative to change the rate of tolls, and the judgment should be reversed.

F. T. HORD, for defendant—

Argued. 1. That by the original charter no gate was to be set up, or tolls collected, until the whole five miles of road was complete from Maysville to the south end of Washington, and no tolls to be collected until the five miles were completed, and the clear inference is that the specified tolls were to be paid for five miles travel on the road, and not to be paid for merely passing a gate, or for traveling one mile or less on the road.

2. That all public grants are to be strictly construed, and in the case of *U. S. v. Arredando,* 6 *Peters,* 736, the leading cases on this subject are collected by the learned judge who delivered the opinion of the court, recognizing the principle that in grants by the public nothing passes by implication. (*Jackson v. Lampkin,* 6 *Pet.,* 289; *Beaty v. The Lessee of Knowles,* 4 *Pet.,* 165; *Providence Bank v. Billings & Pittman,* 4 *Pet.,* 514.) The principle is farther illustrated and

confirmed, as relates to road charters, in the case of *The Charles River Bridge Co. v. The Warren Bridge*, 11 *Pet.*, 546, 7, 8—the court in that case said, that in the case of the *Providence Bank v. Billings & Pittman*, (4 *Peters*, 514,) chief justice Marshall, speaking of the taxing power said, as the whole community is interested in retaining it undiminished, that community has a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of the state to abandon it does not appear. The principle in this case is the same—it is a charter from the state—the power of the state must be so used as not to destroy the value of the franchise they have granted.

The object of all government is to promote the prosperity of the community, and it can never be presumed that the state intended to diminish its power to accomplish that object. The state ought never to be presumed to surrender its power over its roads, because, like the taxing power, the community has an interest in them.

The company take no privilege that is not granted by the charter, and the charter gives no power to collect toll for traveling a distance short of five miles. The amendary acts are not in conflict with the charter, and the judgment of the circuit court is right, and should be affirmed.

Judge SIMPSON delivered the opinion of the court.

How recovered a judgment against the Maysville and Lexington turnpike road company for twenty-five dollars, which he contends he had paid to them, for extra and illegal tolls on said road. The following facts were agreed by the parties:

"That the plaintiff, How, travels seven and a quarter miles on the turnpike, and passes through two toll-gates, at which he pays full tolls; and that he has paid the sum of twenty-five dollars over what would have been the tolls if proportioned to the distance traveled. It is also agreed that the company have received no

July 4.

more than the regular toll charged at each gate, and that the rates of tolls established and collected by them are in accordance with their original and amended charter. Joseph How is a citizen of Mason county, lives contiguous to the Maysville and Lexington turnpike road, and he has paid the excess of tolls before stated, in traveling from his residence, in Mason county, to the court house of the county, in Maysville."

The following act, to establish a just principle in the rates of toll on turnpike roads, was passed in 1849. (*Session acts* 1848-9, *page* 30.)

"*Be it enacted by the General Assembly of the Commonwealth of Kentucky*, That when any person whatsoever, may travel to or from the residence of any individual residing contiguous to any turnpike road now in existence, or to be hereafter made, to the court house or county town in any county in which such residence may be situated, the person or persons so traveling, in any mode whatever, shall not be subject to any other or greater toll, for the actual distance traveled, than will be proportionate to full toll for five miles of travel upon said turnpike road."

And in 1851, the legislature passed another act to regulate tolls on turnpike roads in Mason county. (*Session acts* 1850-1, *local laws, page* 225.) By this act it was provided : "That when any person or persons, on horse-back, or with wheel carriages or wagons, may travel on any turnpike road in the county of Mason, and shall travel on said turnpike a less distance than five miles, then such person or persons shall only be charged, when passing any one of the gates of said turnpike, for the actual distance traveled, at a rate proportionate to full toll for five miles of travel on such road."

Both these acts seemed to have been intended to effect the same object. One is a general law, and the other is local in its application ; but to the extent of their operation the object of each was the same, to-wit, to regulate the rate of tolls according to the

distance that the travel upon the road actually extended.

If How had a right to travel upon this turnpike road, without being compelled to pay any toll, except that which the company was authorized to charge under these acts of the legislature, then he has paid for tolls twenty-five dollars more than he was bound to pay the company.

But the company contend, that by their charter they have the right to charge full toll at each gate upon the road, without any regard to the distance traveled, and that these acts of the legislature cannot deprive them of any of the rights or privileges thus vested in them.

By the 15th section of the act incorporating this company, (*session acts*, 1826-7, *page* 89,) it was enacted: "That when said company shall have perfected the road, or any part or parts thereof, from time to time, as aforesaid, and when the same shall have been examined, approved, and licensed, as aforesaid, it shall and may be lawful for them to appoint such and so many toll-gatherers as they may think proper, to collect and receive of and from all and every person and persons using the said road, the tolls and rates hereinafter mentioned, that is to say, for every space of five miles in the length of said road, the following sums of money, and so in proportion for any greater or less distance, at which gates shall be fixed to collect tolls."

The company have the right to charge the tolls specified in the act, for every space of five miles in the length of the road, and the distance is evidently referred to for the purpose of fixing the rate of the tolls. These tolls are to be collected by them, for the use of the road for five miles; but have they a right to charge the same tolls if the road be not used that distance? If they have this right, it is not expressly given to them, but must arise by implication. As the charter is silent upon the subject, it becomes a question of construction. As the right to demand toll at

each gate is not expressly restricted to the distance traveled, the existence of the right to collect full tolls is deduced from the absence of such a restriction. On the other hand it is contended, that by the charter the tolls are evidently regulated by distance, and a just and equitable interpretation of its provisions requires that the amount of the tolls to which the company are entitled should be determined by the actual distance the road shall be used.

1. A right conferred by the legislature upon a turnpike road company, cannot be taken away by subsequent legislation; but subsequent legislation, which may be supposed to conflict with chartered rights, should not be so construed, unless it be imperiously demanded by the general scope, and evident design of all the provisions of the charter bearing upon the subject.

A right which was conferred by the charter, cannot be divested by subsequent legislation. But when such a right is claimed by construction merely, and the legislature has passed an act inconsistent with the right so claimed, a construction should not be given which would produce a conflict between the two acts, unless it be imperiously demanded by the general scope and evident design of all the provisions in the charter, which bear upon the subject.

Such does not seem to be the case in this instance. The 14th section of the charter, authorized the company to erect a gate upon the completion of five miles of the road, having, however, the road previously examined in the prescribed mode, and having obtained a license for the purpose from the governor. The reference again, in the 15th section, to the space of five miles in the length of the road, may have been designed to fix the amount of toll in proportion to the distance traveled. The company are authorized to collect and receive of and from all and every person and persons using said road the tolls mentioned. How using it? "for every space of five miles in the length of said road," "the following sums of money." A consideration of these two sections of the charter, in connection, makes the construction doubtful, and in such a case that construction must be allowed to prevail which will not produce any legislative conflict.

2. The 14th section of the charter authorized the Maysville turnpike road company to erect a gate upon the completion of five miles of road upon certain conditions, and by the 15th section the company are authorized to collect, from all persons using said road, the prescribed tolls,

The rule prescribed by these two legislative enactments is manifestly just and reasonable. Its observance, it is true, may be attended by some inconven-

ience on account of the difficulty the toll-gatherers may labor under in ascertaining the distance that has been traveled. The reasonable presumption is, where a person whose residence is unknown, is found traveling the road, that he has used it, or intends to use it from gate to gate, and is chargeable with full toll, and he is *prima facia* liable therefor under such circumstances. And where the person using the road resides in the county, and is known to the gate keepers, no great difficulty can arise in determining the amount of toll he shall be required to pay.

We are of the opinion that there is no direct conflict between the provisions contained in the charter of the company, and these acts of the legislature regulating the rates of toll when a turnpike road is used for a less distance than five miles.

Wherefore, the judgment is affirmed.

"the following sums of money."
3. The reasonable construction of the enactment is, that a person found travelling the road, whose residence is unknown, shall pay the tax at each gate; but one whose residence is known shall only be required to pay in proportion to the distance he travels on the pike.